UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS FRANKLIN PALMER, | No. 2:17-cv-0515 GGH |
| Petitioner, | |
| v. | <u>ORDER</u> |
| SCOTT KERNAN, | |
| Respondent. | |

*Introduction and Summary*

    Petitioner was convicted of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)) (throwing hot oil), a second assault with a deadly weapon charge (use of a .22 caliber firearm as a bludgeon); possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1)); and personally inflicting great bodily injury (Cal. Penal Code § 12022.7(a)). The petition raises two issues: use of propensity evidence in violation of due process and destruction of evidence. Although the issues are factually colorable, they fail on a legal basis in federal habeas corpus. The petition will be denied.

*Factual Summary*

    The facts are taken from the opinion of the Third District Court of Appeal, <u>People v.</u>

Palmer, 2015 WL 7756166 (Cal. App. 2015).

In July 2009, defendant, Randy Jamison, Gary Raper, Robert Rusk, and Sheen Leduc lived together in a four bedroom house on a 1.4–acre lot. On July 27, 2009, defendant and Raper were in the kitchen; defendant was panfrying fish in oil for his dinner. Jamison came into the kitchen to get a steak to grill for his dinner. Defendant, who had a history of telling his roommates to get out of "his kitchen" when he was cooking said: " 'Every time I try to cook, somebody has got to come in my kitchen.' " Defendant then "grabbed" the pan he was cooking in, "slammed" it on the counter, and "stormed" out to his room (which was in the living room).

Jamison went outside to the deck with his steak. Moments later, defendant returned to the kitchen and resumed frying his fish. Jamison returned to the kitchen shortly thereafter and when he opened the refrigerator door, defendant began yelling at him; Jamison yelled back at defendant. Knowing that defendant and Jamison had been drinking beer that day, Gary told them to "shut up," to break it up, and to stop "acting like ... kids." Jamison then started yelling at Raper and defendant took the frying pan off the stove and, using both hands, flung its contents at Jamison. The hot oil and fish hit Jamison's left side and splashed on Raper's right side. Jamison ran out to the deck (screaming in pain), defendant went back to his room, and Raper went to his room to get a towel.

Raper, walking out of his room and wiping himself off, saw defendant coming out of his room with a .22 rifle. Raper heard defendant say, " 'I'm going to kill that mother fucker.' " Meanwhile, Jamison was on the back deck with their other housemate Leduc. He asked Leduc to call 911. Then, less than a minute after Jamison ran outside, defendant walked out onto the deck carrying the rifle. Defendant grabbed the barrel of the rifle and began to beat Jamison with its butt end, aiming the blows at Jamison's head. Jamison blocked the blows to his head with his arm, but the impact of the rifle caused Jamison's arm to split open, leaving a three inch laceration. Jamison fell to the deck, his arm bleeding.

While Jamison was lying on the deck, defendant grabbed a grill with hot coals in it and dumped the hot coals on Jamison. Jamison tried to block the coals with his arm, resulting in multiple burns on his arm. The grate from the grill landed on Jamison's stomach, burning him there as well. Jamison then rolled off the deck and made his way to the grass.

*2 In September 2009, the People charged defendant with numerous felonies, including five counts of assault (Pen.Code, § 245; unless otherwise stated, statutory references that follow are to the Penal Code) and being a felon in

2

possession of a firearm (§ 12021, subd. (a)(1)). Following a bench trial, defendant was convicted on all charges except one count of assault. (*People v. Palmer* (July 19, 2011, C063957) [nonpub. opn.].) The trial court sentenced defendant and defendant appealed. (*Ibid*.) In July 2011, this court reversed defendant's conviction and remanded the matter for a new trial. (*Ibid*.)

Following remittitur, a second amended information was filed charging defendant with four counts of assault and being a felon in possession of a firearm. At his second trial, this one before a jury, defendant argued that he acted in self-defense. To support his claim, defendant testified that Jamison was drunk and belligerent on the night of the assault. According to defendant, Jamison started an argument with Raper and threatened to beat him. Rather than beat Raper, however, Jamison charged at defendant, causing defendant to hit the pan of hot oil and fish, splashing oil on defendant's arm, back, and knee. Defendant said he was knocked to the ground and Jamison ran out the door. Worried his dog (who was in the kitchen according to defendant's testimony) may have been injured by the hot oil, defendant went to his bedroom where he heard her "yipping."

Defendant testified that his dog was not in his room so he went to the back deck to look for her. In the backyard, Jamison charged at defendant and defendant picked up the rifle he had set out earlier for their landlord. Defendant hit Jamison once with the rifle, Jamison tackled him to the ground, and defendant hit him again. Then, according to defendant, Jamison began pounding defendant's head into the deck and, as defendant shoved him away, he saw Jamison fall backward into the grills that were on the deck. Defendant was later treated for injuries to his knee, back, and arms.

Defendant also offered evidence that neither Raper nor Jamison liked him and neither liked living with him.

To rebut defendant's claim of self-defense, the People moved to admit testimony from defendant's former housemate Emmanuel Ugbah. Ugbah would testify that in 2007, defendant threatened him with a torch when Ugbah brought his exercise equipment into a shared room. Defendant objected, claiming the evidence was not admissible for any purpose under Evidence Code section 1101, subdivision (b) and was nothing more than "propensity" evidence, made inadmissible under Evidence Code section 1103. Defendant also argued admission of Ugbah's testimony violated numerous of his constitutional rights. The trial court found the evidence relevant to defendant's claim of self-defense and allowed Ugbah to testify.

Ugbah testified that in 2007, he and defendant were housemates. Ugbah's bedroom

3

was adjacent to the sitting room where defendant kept his drum set. One day, defendant was playing his drums beyond the agreed upon time; defendant and Ugbah argued. To give defendant "a dose of his own medicine," Ugbah brought his exercise equipment into the sitting room. In response, defendant left the room and returned with a torch and can of accelerant. Defendant sprayed the accelerant at Ugbah's face, lit it with the torch, and said, " 'I'll burn you you son of a bitch.' " The flames did not actually touch Ugbah but he called the police. Defendant also called the police. Ugbah moved out the next day.

*3 Following instruction from the trial court and closing arguments, the jury found defendant guilty of assaulting Jamison with hot grease, assaulting Jamison with a rifle, being a felon in possession of a firearm, and misdemeanor assault on Raper. The jury also found true the allegation that defendant inflicted great bodily injury when assaulting Jamison with the hot oil, but acquitted defendant on the charge of assaulting Jamison with the grill and hot coals. The trial court sentenced defendant to eight years eight months in state prison.

People v. Palmer, at *1-3.

*AEDPA Standards*

The statutory limitations of the power of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir.2013) *citing* Greene v. Fisher, 565 U.S. 34, 39 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir.2011) *citing* Williams v. Taylor, 529 U.S. 362, 405-406 (2000). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has

4

not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) *citing* Parker v. Matthews, 587 U.S. 37, 48 (2012). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, supra, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir.2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, supra, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, supra, 538 U.S. at 75 (it is "not enough that a federal habeas court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'" "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) *quoting* Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, supra, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, supra, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.2004). If the last reasoned state court decision adopts or substantially incorporates the

5

reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir.2007) (*en banc*). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, supra, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100. Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a "federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." Johnson v. Williams, 568 U.S. 289, 293 (2013). When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, supra, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir.2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.2003).

      The state court need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at its decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, supra, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Id. at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a

summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington, supra, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. at 101 *quoting* Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102, citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

With these principles in mind the court turns to the merits of the petition.

*Discussion*

    A.  Propensity Evidence (Prior Bad Acts)

Petitioner protested the admission of evidence that on a prior occasion, he acted similarly in a violent fashion with respect to a previous roommate. The Court of Appeal held that such evidence was appropriate as it tended to show criminal intent in the present case. One could fairly argue that the reasoning here is somewhat of a bootstrap. i.e., the rule as expressed would allow almost all prior bad acts into evidence to show intent as long as they were similar. The exception might well swallow the rule.

However, a fair argument is to no avail as the Ninth Circuit has unequivocally held that admission of prior bad act, propensity evidence, has not been held by the Supreme Court to be a violation of due process. Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); thus, under AEDPA standards, the claim is not cognizable. See also Dixon v. Rackley, 2017 WL 1380547 *58 (E.D. Cal. 2017) (and cases cited therein). This claim must be denied.

////

////

7

B. Brady Violation/Destruction of Evidence

Petitioner claims that the prosecution -- here the pertinent police agency -- failed to preserve a 911 call recording made during the fracas at issue which, allegedly, would have picked up petitioner's cries for help (as opposed to his adversary's). There is no dispute that the 911 recording was purged/destroyed. The trial court did not find that it was destroyed in bad faith, but to reinforce the fact that it should have been preserved and produced for discovery purposes, it sanctioned the prosecution by giving the jury a permissive adverse inference instruction regarding its destruction.

However, fatal to petitioner's claims here is that he did not seek review of the issue on appeal. Rather, he raised the issue on collateral habeas review. The Superior Court held:

> 8. The petition is denied because it asserts claims that were raised, or could have been raised, on appeal. Petitioner has failed to establish an exception to the rule barring reconsideration of such claims. (*In re Harris* (1993) 5 Cal.4th 813, 825-26; *In re Waltreus* (1965) 62 Cal.2d 218, 225; *In re Dixon* (1953) 41 Cal.2d 756, 759.)
> 9. The Petitioner has failed to establish special circumstances constituting an excuse for failure to raise an issue on appeal. The Writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction (*In re Walker* (1974) 10 Cal.3d 764, 773; *In re Clark* (1993) 5 Cal.4th 750, 765.)

ECF 17-13, at pp. 1-2.

Petitioner did seek further state habeas review with the appellate court and the California Supreme Court; these courts issued summary denials. ECF 17-15, 17. Under the rule in Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991), federal habeas courts look through to the last reasoned state court decision, i.e., that of the Superior Court.[1]

---

[1] Some courts have held that the Supreme Court in Harrington v. Richter, 562 U.S. 86 (2011) abrogated the Ylst rule. See Wilson v. Warden, 834 F.3d 1227, 1235–36 (11th Cir. 2016) (holding that Harrington v Richter abrogated the Ylst look-through doctrine, and federal courts should not "look through" a summary denial to review a previous opinion), *cert. granted* No. 16-6855, ⎯⎯ U.S. ⎯⎯, 137 S.Ct. 1203 (Feb. 27, 2017) (Wilson v. Sellers). Not only does the undersigned disagree that any abrogation has taken place, Ylst remains the law of the land until the Supreme Court overrules it. It was not expressly or even impliedly overruled in Harrington v.

8

The vitality of California's "Dixon" or "Harris" procedural defaults was firmly recognized in Johnson v. Lee, 136 S.Ct. 1802 (2016) (brushing away decades of Ninth Circuit doubt to the contrary). Johnson determines the issue here. The undersigned will not address the merits alternatively because there is no doubt about the procedural bar.

Claim 2 should be denied.

*Conclusion*

The petition is denied. No Certificate of Appealability (COA) will issue.

Dated: December 11, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

---

Richter.